IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HAROLD NOEL, | No. 4:25-CV-00163 |
| Plaintiff, | |
| v. | (Chief Judge Brann) |
| NURSE LISA SHAW, *et al.*, | |
| Defendants. | |

MEMORANDUM OPINION

APRIL 29, 2025

Plaintiff Harold Noel filed the instant *pro se* civil rights lawsuit alleging constitutional violations by officials at the State Correctional Institution, Benner Township (SCI Benner Township), in Bellefonte, Pennsylvania. His Section 1983[1] claims sound in deliberate indifference to serious medical needs, retaliation, and conspiracy. Because Noel fails to state a claim upon which relief may be granted, the Court will dismiss his complaint pursuant to 28 U.S.C. § 1915A(b)(1) but will grant him leave to amend.

I. BACKGROUND

Noel avers that he has several medical conditions, including high blood pressure, which require him to take certain medications.[2] His medications are

---

[1] 42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

[2] Doc. 1 ¶ 1.

designated as "Keep on Person (KOP)," meaning the medicine is stored with him in his cell and self-administered rather than distributed at the daily pill line.[3] When an inmate's KOP medication runs low, however, they have to pick up their refills at the pill line.[4]

Noel recounts that in late June 2024, he ran out of his KOP medications and he was scheduled to pick up refills at the morning pill line on Sunday, June 30, 2024.[5] However, that day SCI Benner Township began a three-day lockdown, and during lockdowns prisoners are not permitted to leave their cells to go to the pill line.[6] Instead, prison medical staff distribute the pill-line and KOP medications to the inmates cell by cell.[7]

Noel alleges that, on the first day of the lockdown, Nurse Lisa Shaw was distributing medications on his block and he asked her to provide him with his KOP medicine because he could not leave his cell.[8] According to Noel, Shaw replied, "No KOP meds during lockdown," and kept walking.[9] The following day, July 1, 2024, the same exchange occurred: Noel asked Shaw for his KOP medications, and Shaw responded, "No KOP meds during lockdown."[10] Noel

---

[3]  Id. ¶¶ 2, 8, 10.
[4]  Id. ¶ 3.
[5]  Id. ¶¶ 4-5.
[6]  Id. ¶¶ 5-6.
[7]  Id. ¶ 6.
[8]  Id. ¶ 7.
[9]  Id. ¶¶ 7-8.
[10] Id. ¶ 9.

avers that he informed Shaw that his KOP medications were "health sustaining" medicines for his blood pressure, but Shaw simply repeated her dismissive statement and continued down the housing tier.[11]

Noel alleges that, by the second day, he was "feeling dizzy and his heart was racing," so he contacted the corrections officer at the desk on his block and asked the officer to call medical and request delivery of his blood pressure medications.[12] The corrections officer contacted medical and the call was answered by Shaw, who again responded that there were "[n]o KOP meds during lockdown" under "DOC policy."[13] Shaw allegedly continued, "He'll get [the medications] after lockdown is over, and if he dies I'll do chest compressions."[14]

According to Noel, another nurse (Phillip Rogers) overheard this phone call between the corrections officer and Shaw.[15] Rogers visited Noel later that day, examined him, and then retrieved Noel's KOP medications for him.[16] Rogers also allegedly informed Noel that it was not DOC policy to deny KOP medicine during a lockdown, but that Shaw simply did not want to carry and distribute the KOP medications for all the inmates on the four blocks to which she was assigned; *i.e.*,

---

[11]  *Id.* ¶ 10.
[12]  *Id.* ¶ 11.
[13]  *Id.* ¶¶ 14-15.
[14]  *Id.* ¶ 15.
[15]  *Id.* ¶ 17.
[16]  *Id.* ¶¶ 18-21.

she was simply being "lazy."[17] Noel avers that he filed a formal grievance about Shaw's behavior on July 6, 2024.[18]

Approximately ten days later, on or around July 16,[19] Noel went to the pill line to pick up his KOP medications.[20] He alleges that, while he was turned around with his back to the dispensing window, Shaw reached out the window and "vigorously grabbed" his right buttock and then called him a "big baby" when he objected.[21]

Noel verbally reported this groping incident to a corrections sergeant, who instructed him to go to security to file a formal Prison Rape Elimination Act (PREA) complaint.[22] Noel complied and was interviewed by Lieutenant Macidym, who took the PREA report.[23] Noel avers that he has sent multiple follow-up requests about the status of the PREA investigation to various state officials, but has only received one reply in September 2024 from the state PREA coordinator, who provided an incident number and informed Noel that "the investigation was ongoing."[24]

---

[17] Id. ¶¶ 22-23.
[18] Id. ¶ 25.
[19] Noel first alleges that the groping incident with Shaw occurred on July 11, (see id. ¶ 26), but later alleges that it occurred on July 16, (see id. ¶ 55).
[20] Id. ¶ 26.
[21] Id. ¶¶ 29, 31.
[22] Id. ¶¶ 32-33.
[23] Id. ¶¶ 34, 57.
[24] Id. ¶¶ 41-44, 58, 83, 84.

4

Noel further alleges that several Defendants attempted to interfere in the PREA investigation or get him to abandon his claim. He contends that Unit Manager Jessica Baumgardner, CCPM/PREA Coordinator Michelle Dunn, Superintendent Bradley Booher, Lieutenant Macidym, and Captain Harper conspired to inhibit and delay the investigation of the PREA claim or to influence Noel to dismiss it.[25]

Noel lodged the instant Section 1983 complaint in this Court on January 27, 2025.[26] He is suing Nurse Shaw, Unit Manager Baumgardner, CCPM/PREA Coordinator Dunn, Superintendent Booher, Captain Harper, and Lieutenant Macidym.[27] He asserts four claims: (1) Eighth Amendment deliberate indifference to serious medical needs against Shaw and Booher (Count I); (2) First Amendment retaliation against Shaw (Count II); (3) civil conspiracy to violate his First Amendment Petition Clause rights against Baumgardner, Dunn, Booher, Harper, and Macidym (Count IV); and (4) state-law assault against Shaw (Count III).[28] He seeks a declaration that his constitutional rights were violated, compensatory and punitive damages, and attorney's fees and costs.[29]

---

[25] *See id.* ¶¶ 128-72; 210-11.
[26] *See generally* Doc. 1.
[27] *Id.* at pp. 2-4.
[28] *See id.* ¶¶ 201-11.
[29] *Id.* at p. 36.

## II.   STANDARDS OF REVIEW

Courts are statutorily obligated to review, "as soon as practicable," *pro se* prisoner complaints targeting governmental entities, officers, or employees.[30] One basis for dismissal at the screening stage is if the complaint "fails to state a claim upon which relief may be granted[.]"[31] This language closely tracks Federal Rule of Civil Procedure 12(b)(6). Accordingly, courts apply the same standard to screening a *pro se* prisoner complaint for sufficiency under Section 1915A(b)(1) as they utilize when resolving a motion to dismiss under Rule 12(b)(6).[32]

In deciding a Rule 12(b)(6) motion to dismiss, courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[33] The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff.[34] In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to

---

[30]  *See* 28 U.S.C. § 1915A(a).
[31]  *Id.* § 1915A(b)(1).
[32]  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 109-10 & n.11 (3d Cir. 2002); *O'Brien v. U.S. Fed. Gov't*, 763 F. App'x 157, 159 & n.5 (3d Cir. 2019) (per curiam) (nonprecedential); *cf. Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000).
[33]  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996).
[34]  *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008).

a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.[35]

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry.[36] At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim."[37] Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded.[38] Finally, the court must review the presumed-truthful allegations "and then determine whether they plausibly give rise to an entitlement to relief."[39] Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[40]

Because Noel proceeds *pro se*, his pleadings are to be liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]"[41] This is particularly true when the *pro se* litigant, like Noel, is incarcerated.[42]

---

[35] *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).
[36] *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted).
[37] *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (alterations in original)).
[38] *Id.* (quoting *Iqbal*, 556 U.S. at 679).
[39] *Id.* (quoting *Iqbal*, 556 U.S. at 679).
[40] *Iqbal*, 556 U.S. at 681.
[41] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citations omitted).
[42] *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).

## III. DISCUSSION

Upon review of Noel's complaint, he fails to state a Section 1983 claim upon which relief may be granted. The Court will address his pleading deficiencies in turn.

### A.     Personal Involvement

It is well established that, in Section 1983 actions, liability cannot be "predicated solely on the operation of *respondeat superior*."[43] Rather, a Section 1983 plaintiff must aver facts that demonstrate "the defendants' personal involvement in the alleged misconduct."[44] Personal involvement can include direct wrongful conduct by a defendant, but it can also be demonstrated through allegations of "personal direction" or of "actual knowledge and acquiescence"; however, such averments must be made with particularity.[45] Furthermore, it is equally settled that involvement in the post-incident grievance process alone does not give rise to Section 1983 liability.[46]

---

[43] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (affirming same principle in *Bivens* context).
[44] *Dooley*, 957 F.3d at 374 (citing *Rode*, 845 F.2d at 1207).
[45] *Id.* (quoting *Rode*, 845 F.2d at 1207).
[46] *See id.* (affirming dismissal of claims against prison officials for lack of personal involvement when officials' "only involvement" was "their review and denial of [plaintiff]'s grievance"); *Lewis v. Wetzel*, 153 F. Supp. 3d 678, 696-97 (M.D. Pa. 2015) (collecting cases); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (nonprecedential); *Alexander v. Gennarini*, 144 F. App'x 924, 925 (3d Cir. 2005) (nonprecedential) (explaining that prisoner's claims against certain defendants were "properly dismissed" because the allegations against them "merely assert their involvement in the post-incident grievance process").

Noel asserts an Eighth Amendment medical indifference claim against Nurse Shaw and Superintendent Booher. He does not, however, plausibly allege how Superintendent Booher was personally involved in any allegedly deficient medical care. In fact, the section of Noel's complaint that recounts the incident involving Shaw's failure to deliver KOP medications during lockdown is completely silent as to Booher's alleged conduct or involvement.[47]

To plausibly plead a Section 1983 claim, Noel must specify each Defendant's personal involvement in the alleged constitutional misconduct in order to state a claim against them. Accordingly, the Court must dismiss the Section 1983 Eighth Amendment medical indifference claim against Booher pursuant to 28 U.S.C. § 1915A(b)(1) for lack of personal involvement.

### B. Eighth Amendment Medical Indifference

In the context of prison medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated."[48] To state an Eighth Amendment deliberate indifference claim regarding inadequate medical care, a plaintiff must plausibly allege that "(1) he had a serious medical need, (2) the defendants were deliberately indifferent to that

---

[47] In one paragraph much later in his complaint, Noel cursorily alleges that Booher "had direct knowledge" that medical staff members were not carrying KOP medications to the blocks during lockdown and "acquiesced and/or consented" to this practice. *See* Doc. 1 ¶ 154. This sentence is a mere legal conclusion that is not entitled to the assumption of truth and may be disregarded. *See Connelly*, 809 F.3d at 787.

[48] *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

9

need; and (3) the deliberate indifference caused harm to the plaintiff."[49]  A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."[50]

Deliberate indifference by prison officials may be evidenced by intentional refusal to provide care known to be medically necessary, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, or denial of reasonable requests for treatment resulting in suffering or risk of injury.[51]  Deliberate indifference to serious medical needs is an exacting standard, requiring a showing of "unnecessary and wanton infliction of pain."[52]  Claims sounding in mere medical negligence will not suffice.[53]

Assuming Noel has stated a serious medical need with respect to his high blood pressure, his medical indifference claim fails at the third element.  That is, he has not plausibly alleged facts that would show that Shaw's purported deliberate indifference to his serious medical needs caused him physical harm.

Noel was allegedly denied medication by Shaw on two mornings—June 30 and July 1.  It appears that Nurse Rogers brought Noel's blood pressure medication

---

[49] *Durham v. Kelley*, 82 F.4th 217, 229 (3d Cir. 2023) (citation omitted); *see also Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).
[50] *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).
[51] *See Durmer v. O'Carroll*, 991 F.2d 64, 68 & n.11 (3d Cir. 1993) (quoting *Lanzaro*, 834 F.2d at 346).
[52] *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).
[53] *Rouse*, 182 F.3d at 197.

to his cell later in the day on July 1 after overhearing Shaw's conversation with the corrections officer.[54] Thus, according to Noel, he experienced a delay of approximately one day in receiving his prescribed blood pressure medications.[55]

While the Court does not trivialize the seriousness of delaying prescription medication to inmates, it does not appear that Noel suffered any harm from the brief delay in the instant case. At most, he alleges that on the second day he felt "dizzy" and experienced an increased heart rate.[56] It is well established, however, that inmates claiming that they received constitutionally deficient medical care must show that they were physically harmed by the state actor's deliberate indifference.[57] Noel's complaint does not contain any such allegations of harm or

---

[54] *See* Doc. 1 ¶¶ 9-21.
[55] Noel does not state what medications were denied or if the pills were prescription or over-the-counter medications. The Court assumes at this juncture that Noel is alleging that he was denied prescription blood pressure medication.
[56] *See* Doc. 1 ¶ 11.
[57] *See Brooks v. Kyler*, 204 F.3d 102, 105 n.4 (3d Cir. 2000) (explaining that prisoner's claim could not survive Rule 56 challenge because "he presented no evidence of any harm resulting from a delay in medical treatment") (citing *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)); *Joh v. Suhey*, 709 F. App'x 729, 731 (3d Cir. 2017) (nonprecedential) (finding that brief delay in treatment did not demonstrate that medical provider disregarded "an excessive risk" to inmate's safety because inmate did not allege that "the delay in treatment led to any serious harm"); *see also DeJesus v. Delaware*, 833 F. App'x 936, 940 (3d Cir. 2020) (noting that deliberate indifference to serious medical need must have caused "harm or physical injury" to plaintiff); *Westfall v. Luna*, 903 F.3d 534, 551 (5th Cir. 2018) ("Delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference that results in substantial harm," which can include the "pain suffered during the delay itself") (citation omitted)); *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000) ("Delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm."); *Kellum v. Mares*, 657 F. App'x 763, 771 (10th Cir. 2016).

injury, so his Eighth Amendment claim against Nurse Shaw must be dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915A(b)(1).[58]

## C.     First Amendment Retaliation

Although a prisoner's constitutional rights are necessarily circumscribed, an inmate still retains First Amendment protections when they are "not inconsistent" with prisoner status or with the "legitimate penological objectives of the corrections system."[59] To state a First Amendment retaliation claim, a plaintiff must plausibly plead that (1) "he was engaged in constitutionally protected conduct," (2) he suffered an "adverse action" by prison officials sufficient to deter a person of ordinary firmness from exercising his First Amendment rights, and (3) the plaintiff's protected conduct was a "substantial or motivating factor" in the prison officials' decision to take the adverse action.[60]

Noel alleges that Nurse Shaw retaliated against him for filing a grievance concerning Shaw's failure to provide KOP medications during lockdown. The retaliatory conduct alleged is a single incident where Shaw purportedly reached through the pill-line window and grabbed Noel's right buttock and then called him a "big baby" when he objected. While no doubt an inappropriate and offensive

---

[58] Any Eighth Amendment claim leveled against Superintendent Booher must also be dismissed under Section 1915A(b)(1). Noel fails to plead any element of a medical indifference claim with respect to Booher, as his single allegation against Booher is a legal conclusion.

[59] *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (quoting *Newman v. Beard*, 617 F.3d 775, 781 (3d Cir. 2010)).

[60] *Id.* (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (quoting *Rauser*, 241 F.3d at 333).

touching, this isolated incident simply does not rise to the level of an adverse action that is *objectively* sufficient to deter a person of ordinary firmness from exercising their First Amendment rights.[61]  Less important, yet still relevant, is that it did not subjectively deter Noel from exercising his First Amendment rights, either, as demonstrated by Noel's immediate filing of a PREA report and related grievance.  Noel's retaliation claim therefore must be dismissed under Section 1915A(b)(1) for failure to state a claim.

### D.    Section 1983 Conspiracy

Noel alleges that multiple Defendants conspired to inhibit or delay the processing of his PREA report.  He claims that he filed the report on July 16, 2024, the same day the groping incident occurred, but has not received a formal decision on the incident.  As best as the Court can discern, Noel appears to be asserting that

---

[61] *See, e.g.*, *Jackson v. Madery*, 158 F. App'x 656, 661-62 (6th Cir. 2005) (nonprecedential) (finding that single episode where defendant rubbed and grabbed prisoner-plaintiff's buttocks "in a degrading and humiliating manner" was insufficient to implicate Eighth Amendment sexual abuse claim or rise to the level of an adverse action for First Amendment retaliation claim); *Hursey v. Anderson*, No. 16-1146, 2017 WL 3528206, at *3 (6th Cir. Mar. 31, 2017) (nonprecedential) (finding that corrections officer's sexually inappropriate exposure of his buttocks to plaintiff was "truly inconsequential" and thus insufficient to deter a person of ordinary firmness from exercising First Amendment rights); *Suarez v. Kremer*, No. 03-cv-809, 2008 WL 4239214, at *12 (W.D.N.Y. Sept. 11, 2008) (finding that "isolated and inappropriate touching" of inmate's genitals and back by corrections officer was insufficient as a matter of law to deter a person of ordinary firmness from exercising First Amendment rights); *Camacho v. DuBois*, No. 21-CV-06180, 2022 WL 17807433, at *2, *4 (S.D.N.Y. Dec. 19, 2022) (holding that correction officer grabbing his own groin area while pulling prisoner-plaintiff's head towards it and making verbal threat of sexual assault was insufficient to state an adverse action for First Amendment claim).

Defendants conspired to violate his right to petition the government for redress under the First Amendment's Petition Clause.

To state a claim for Section 1983 conspiracy, a plaintiff must plausibly allege: "'(1) two or more persons conspire to deprive any person of [constitutional rights]; (2) one or more of the conspirators performs . . . any overt act in furtherance of the conspiracy; and (3) that overt act injures the plaintiff in his person or property or deprives the plaintiff of any right or privilege of a citizen of the United States,' with the added gloss under § 1983 that 'the conspirators act under the color of state law.'"[62] Notably, to state a conspiracy claim, a plaintiff must do more than recite talismanic phrases like "conspire" and "act in concert."[63]

---

[62] *Jutrowski v. Township of Riverdale*, 904 F.3d 280, 294 n.15 (3d Cir. 2018) (alterations in original) (quoting *Barnes Found. v. Township of Lower Merion*, 242 F.3d 151, 162 (3d Cir. 2001)).

[63] *See id.* at 295 (explaining that, to state a civil conspiracy claim, a plaintiff must demonstrate that defendants "somehow reached an understanding to deny [the plaintiff] his rights" (alteration in original)); *Young v. Kann*, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991) (citing *Kalmanovitz v. G. Heileman Brewing Co.*, 595 F. Supp. 1385, 1400 (D. Del. 1984), *aff'd* 769 F.2d 152 (3d Cir. 1985) ("It is a longstanding rule in the Third Circuit that a mere general allegation ... [or] averment of conspiracy or collusion without alleging the facts which constituted such conspiracy or collusion is a conclusion of law and is insufficient [to state a claim]." (citing *Black & Yates, Inc. v. Mahogany Ass'n*, 129 F.2d 227, 231-32 (3d Cir. 1941)))); *Adams v. Corr. Emergency Response Team*, 857 F. App'x 57, 61 (3d Cir. 2021) (nonprecedential) (explaining that, to state a Section 1985 conspiracy claim, a plaintiff must sufficiently allege "facts and circumstances" that "support the elements of the conspiracy" and show agreement between defendants to deprive a plaintiff of a constitutional right); *Stankowski v. Farley*, 251 F. App'x 743, 748 (3d Cir. 2007) (nonprecedential) (finding that plaintiff's "conclusory allegation" that defendants "conspired" against him fails to state a claim for civil conspiracy).

Noel's conspiracy claim fails because he has not identified "an actual underlying constitutional violation" of his rights.[64] Noel alleges that Defendants took certain actions to inhibit or delay a response to his PREA complaint. It is possible that Noel is also alleging that some Defendants conspired to inhibit responses to his DC-ADM 804 grievances or appeals.[65] However, it is well settled that while inmates have a First Amendment right to seek redress of grievances as part of their right of access to courts,[66] there is no concomitant First Amendment right to receive a response to a grievance or complaint.[67] So while Noel had a right to file a PREA complaint and grievances—steps he concedes he completed—he had no corresponding constitutional right to receive a response from state officials to those complaints. Without identifying an underlying constitutional violation, Noel has failed to state a Section 1983 conspiracy claim, too.[68]

---

[64] *Harvard v. Cesnalis*, 973 F.3d 190, 207 (3d Cir. 2020).
[65] *See* Doc. 1 ¶¶ 59-77.
[66] *See Mack v. Warden Loretto FCI*, 839 F.3d 286, 297-99 (3d Cir. 2016).
[67] *See Kerchner v. Obama*, 612 F.3d 204, 209 (3d Cir. 2010); *Booth v. King*, 346 F. Supp. 2d 751, 761 (E.D. Pa. 2004) ("[A]lthough prisoners have a constitutional right to seek redress of grievances as part of their right of access to courts, this right is not compromised by the failure of prison officials to address these grievances."); *see also Am. Bus Ass'n v. Rogoff*, 649 F.3d 734, 739 (D.C. Cir. 2011) ("Far from holding that the Petition Clause requires the possibility of a remedy, . . . the clause does not even guarantee[] a citizen's right to receive a government *response* to or official *consideration* of a petition for redress of grievances." (citation and internal quotation marks omitted)).
[68] *See Harvard*, 973 F.3d at 207; *Clayworth v. Luzerne County*, 513 F. App'x 134, 138 (3d Cir. 2013) (nonprecedential) ("Thus, because [plaintiff] failed to establish an underlying violation of his constitutional rights, his [civil rights] conspiracy claim also fails.") (citing *Parkway Garage, Inc. v. City of Philadelphia*, 5 F.3d 685, 700 (3d Cir. 1993), *abrogated on other grounds by United Artists Theatre Cir., Inc. v. Township of Warrington*, 316 F.3d 392 (3d Cir. 2003)).

## E. Official Capacity Claims

Noel sues all Defendants in their individual and official capacities.[69] However, any official capacity claim seeking monetary damages from state officials is barred by Eleventh Amendment sovereign immunity.

The Eleventh Amendment to the United States Constitution prevents federal courts from entertaining lawsuits—by United States citizens or citizens of foreign states—brought against a state.[70] This immunity from private suit extends to state agencies as well as state officials acting in their official capacity, because such lawsuits are essentially civil actions "against the State itself."[71] States may waive this immunity if they choose, but Pennsylvania has explicitly not waived its immunity with respect to claims brought under Section 1983.[72] There are two exceptions to the Eleventh Amendment's bar to private suits against nonconsenting states: (1) "Congress may abrogate a state's immunity" and (2) "parties may sue state officers for *prospective* injunctive and declaratory relief."[73]

Noel seeks compensatory and punitive damages, as well as legal costs. To the extent these damages are sought against Defendants in their official capacities,

---

[69] *See* Doc. 1 ¶¶ 118, 130, 140, 148, 158, 167.
[70] U.S. CONST. amend. XI; *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267-68 (1997); *Hans v. Louisiana*, 134 U.S. 1, 10 (1890).
[71] *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).
[72] *See* 42 PA. CONS. STAT. § 8521(b); *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020); *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 & n.5 (3d Cir. 2010) (citing 42 PA. CONS. STAT. § 8521(b)).
[73] *Wheeling & Lake Erie Ry. Co. v. Pub. Util. Comm'n of Pa.*, 141 F.3d 88, 91 (3d Cir. 1998) (emphasis added) (citing, *inter alia*, *Ex parte Young*, 209 U.S. 123 (1908)).

such claims are barred by Eleventh Amendment sovereign immunity. Moreover, Noel's request for a declaration that his constitutional rights were violated[74] is retrospective, rather than prospective, in nature. Thus, Noel's official capacity claims must be dismissed as well.

F.  **Supplemental Jurisdiction**

In Count III, Noel asserts a state-law claim of battery against Shaw for the groping incident. However, because Noel fails to plausibly allege a federal Section 1983 claim against any Defendant, the Court declines to exercise supplemental jurisdiction over his state-law battery claim.[75]

G.  **Leave to Amend**

Generally, "plaintiffs who file complaints subject to dismissal under [the Prison Litigation Reform Act of 1995] should receive leave to amend unless amendment would be inequitable or futile."[76] Noel will be granted leave to amend in the event that he can plead facts that would plausibly state a Section 1983 claim regarding deliberate indifference to serious medical needs. His First Amendment retaliation claim against Shaw and his civil conspiracy claim against Baumgardner,

---

[74] *See* Doc. 1 at p. 36.
[75] *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) (explaining general rule that if all federal claims are dismissed before trial, courts should likewise dismiss pendent state-law claims); *Shaffer v. Bd. of Sch. Dirs. Albert Gallatin Area Sch. Dist.*, 730 F.2d 910, 912 (3d Cir. 1984) (explaining that, absent "extraordinary circumstances," supplemental jurisdiction over state-law claims should be declined "where the federal claims are no longer viable" (citation omitted)).
[76] *Grayson*, 293 F.3d at 114.

Booher, Dunn, Harper, and Macidym will be dismissed with prejudice, as those claims are legally—rather than factually—deficient. Granting leave to amend these claims would be futile, as the substance of the claims does not, and cannot, rise to the level of a constitutional violation.

If Noel chooses to file an amended complaint in conformity with this Memorandum, it should be a stand-alone document, complete in itself and without reference to any previous pleadings. The amended complaint should set forth his claims in short, concise, and plain statements, and in sequentially numbered paragraphs. Noel must leave one-inch margins on all four sides of his pleading.[77] Any exhibits or documents he wishes to present should be attached to his amended complaint. Noel *may not* include claims that have been dismissed with prejudice.[78] He must name proper defendants and specify the offending actions taken by a particular defendant. He must also sign the amended complaint and indicate the nature of the relief sought.

If Noel does not timely file an amended complaint, dismissal of his Section 1983 claims without prejudice will automatically convert to dismissal with prejudice and the Court will close this case.

---

[77] *See* LOCAL RULE OF COURT 5.1.
[78] Additionally, Noel may not include irrelevant allegations like the sections of his complaint that discuss his mayonnaise allergy and related staff issues. *See* Doc. 1 ¶¶ 104-12, 180-200. These allegations do not form the basis of any claim in his complaint and should be omitted in any future pleading.

## IV. CONCLUSION

Based on the foregoing, the Court will dismiss Noel's Section 1983 claims pursuant to 28 U.S.C. § 1915A(b)(1) because he fails to state a claim upon which relief may be granted. The Court declines to exercise supplemental jurisdiction over his state-law battery claim. Noel may file an amended complaint in accordance with this Memorandum. If no amended complaint is timely filed, dismissal without prejudice will automatically convert to dismissal with prejudice and the Court will close this case. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge